# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. 1:19-cv-00768

JEANETTE VIZGUERRA,

Plaintiff,

v.

U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT,

Defendant.

---

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Plaintiff Jeanette Vizguerra, through her attorneys Aaron Elinoff and Danielle C. Jefferis of NOVO LEGAL, L.L.C., hereby submits this Complaint for Declaratory and Injunctive Relief alleging the actions of U.S. Customs and Immigration Enforcement (ICE) violate the Administrative Procedure Act (APA) and the U.S. Constitution. In support thereof, she states:

### INTRODUCTION

1. Jeanette Vizguerra is a prominent activist, beloved member of her community, and devoted mother to four children, three of whom are U.S. citizens. She is one of just a hundred people in the world whom TIME MAGAZINE named to its list of the most influential people in 2017, an honor she shares with figures like Pope Francis, Melinda Gates, and Ana DuVernay. Through her tireless work, Ms. Vizguerra has earned the unparalleled support and admiration from prominent figures across the country, including Senator Michael Bennet, U.S. Congresswoman Diana DeGette, Colorado State Senator Jessie Ulibarri, Denver City Councilman Paul Lopez,

Denver City Councilwoman Robin Kniech, Denver City Councilwoman Deborah Ortega, Denver City Councilman Paul Kashmann, and then-U.S. Congressman—now-Governor—Jared Polis.

2. In 2017, Ms. Vizguerra spent eighty-six days in sanctuary in a Denver church, fearing agents of Defendant ICE would arrest and immediately deport her to Mexico. Her sacrifice and her fight to keep her family together garnered international attention, and thousands of people signed petitions decrying the government's efforts to deport her. Ms. Vizguerra left the church after receiving a limited stay of deportation from Defendant ICE. But her stay has now expired, and she has returned to sanctuary, dreading the same fate.

3. ICE has carried out a years-long campaign against Ms. Vizguerra, expending considerable time and resources to arrest and deport her to Mexico, all premised on the accusation that Ms. Vizguerra is in the United States unlawfully after a previous deportation. But Defendant ICE's concentrated efforts to deport Ms. Vizguerra are arbitrary and capricious. In fact, they are baseless: Ms. Vizguerra has no prior deportation order and, therefore, there is no valid justification for Defendant ICE's efforts to deport her without affording her full due process of law.

4. This case challenges an executive agency's unlawful, arbitrary actions against a woman who has fought for decades for her children, her community, and the rights of all Americans, no matter their citizenship status. The U.S. Constitution guarantees Ms. Vizguerra's right to due process, and to that end the law allows for a process by which Ms. Vizguerra may present a case to justify her right to remain in the United States. Defendant ICE has not permitted Ms. Vizguerra to do so. But Defendant ICE is not above the law; the agency must be ordered to stop its baseless campaign against Ms. Vizguerra.

## PARTIES

**Plaintiff**

5. Ms. Vizguerra was born in Mexico. She resides in Denver, Colorado, where she has lived for more than twenty years. Defendant ICE alleges she is subject to immediate deportation from the United States.

**Defendants**

6. Defendant ICE is a component of the U.S. Department of Homeland Security and is the sub-agency of DHS responsible for carrying out deportation orders.

## JURISDICTION AND VENUE

7. This action arises under the Fifth Amendment of the U.S. Constitution and the Administrative Procedure Act. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 5 U.S.C. § 701, *et seq*. This Court has jurisdiction to grant declaratory and further necessary and proper relief pursuant to 28 U.S.C. §§ 2201-2201 and Federal Rules of Civil Procedure 57 and 65.

8. Venue lies in this district pursuant to 28 U.S.C. § 1391, as Defendant is located in, and a substantial part of the events giving rise to this action occurred in, this district.

## FACTUAL ALLEGATIONS

*Ms. Vizguerra's Life in the United States*

9. Ms. Vizguerra was born in Mexico City, Mexico, on February 25, 1972. She has two older siblings, a brother and sister. Her mother worked as a dental assistant and cleaned homes. Her father was an assistant mechanic for a transportation company.

10. Ms. Vizguerra met her future husband while both were still in high school. They dated for a couple of years and then moved in together. Soon thereafter, the young couple's first daughter arrived.

11. Life in Mexico was not easy for Ms. Vizguerra. She was the victim of abuse and violence from multiple sources. Yet, she fought to raise and protect her family.

12. In 1997, she and her then-husband decided to make the dangerous journey to the United States to start a new life for themselves and their young daughter. After settling in Denver, Ms. Vizguerra began working as a janitor making $5.25 an hour. Soon, she also began working as an organizer with the Service Employees International Union (SEIU), fighting for protections for her fellow workers.

13. Over the next several years, Ms. Vizguerra's three children were born. She worked long hours, day after day, to provide for them. She also grew more active in the Union and became a vocal advocate for labor and workers' rights. Her focus was always centered on striving for what she believed was right and just, and making the world a better place for her children.

*Ms. Vizguerra's Arrest and Removal Proceedings*

14. On February 4, 2009, Ms. Vizguerra was pulled over during what has been called a "routine traffic stop." Unfortunately, there was very little that was "routine" about it. Ms. Vizguerra was not speeding; the only justification for the stop, to Ms. Vizguerra's knowledge, was the fact that she was driving with an expired inspection sticker, which she had not yet had an opportunity to renew.

15. A law enforcement officer pulled Ms. Vizguerra over. Before asking for her license he said, "Are you legal or illegal in this country?" Ms. Vizguerra knew her rights: She told him, "I am not going to answer that question."

16. The officer arrested her and searched her bag. He found documents that bore Ms. Vizguerra's real name and date of birth but a made-up social security number. Ms. Vizguerra needed that number to apply for a third job. On top of the work she was already doing as a housecleaner and janitor, she needed additional income to provide for her family. Procuring that social security card was a matter of survival for Ms. Vizguerra and her children, and she thought the social security number was fake. She did not know it actually belonged to a real person.

17. Ms. Vizguerra charged in Arapahoe County with misdemeanor identity theft and criminal possession of a forged instrument.

18. Ms. Vizguerra immediately took responsibility for her actions. She pleaded guilty to one misdemeanor count and was sentenced to twenty-one days in jail. She learned from the experience and took the presiding judge's words to heart—that her actions may have impacted other people because the social security number belonged to a real person. Ms. Vizguerra never intended to defraud anyone or cause any person harm. She simply wanted to work hard and put food on the table for her children. She served her time in jail and was released.

19. As a result of her conviction, and because she was living in the United States without authorization, Ms. Vizguerra was then placed in removal proceedings—the term for administrative proceedings initiated by the U.S. Department of Homeland Security and overseen

by the U.S. Department of Justice, designed to determine whether a noncitizen may reside lawfully in the United States pursuant to the Immigration and Nationality Act (INA).[1]

20.     Ms. Vizguerra applied for cancellation of removal before the Denver immigration court under Section 240A(b) of the INA, also codified at 8 U.S.C. § 1229b(b). Cancellation of removal is a form of relief that authorizes the government to "cancel" a noncitizen's deportation and grant lawful permanent residency if the noncitizen meets four statutory requirements. *See* INA § 240A(b)(1)(A)-(D); *also codified at* 8 U.S.C. § 1229b(b)(1)(A)-(D).

21.     On November 18, 2011, the Denver immigration court denied Ms. Vizguerra's application for cancellation of removal and ordered her to be deported to Mexico. However, in the alternative, the immigration court granted her to option of "voluntary departure." Voluntary departure is an alternative form of relief to a deportation order that allows a person to leave the United States at her own expense by a date certain in lieu of the government entering and effectuating a deportation order. *See* INA § 240B, *also codified at* 8 U.S.C. § 1229c.

22.     A noncitizen who is in removal proceedings may request the option of voluntary departure at the conclusion of the removal hearing as a form of alternative relief. *See* INA § 240B 8 U.S.C. § 1229c(b). Because it is a form of relief alternative to a deportation or removal order, the effect of a person's compliance with a voluntary departure order is that no deportation order is entered. *See* INA § 240B(b)(1), *also codified at* 8 U.S.C. § 1229c(b)(1) (providing "the immigration judge enters an order granting voluntary departure *in lieu of* removal") (emphasis added).

---

[1] The INA is the country's primary source of immigration law and is also codified in Title 8 of the U.S. Code. Ms. Vizguerra provides both citations throughout these allegations for ease of reference.

23. Accordingly, the immigration court's grant of this form of relief and Ms. Vizguerra's choice to voluntarily depart the United States at her own expense at the conclusion of the removal proceedings meant the immigration court entered no deportation order against her.

24. Ms. Vizguerra's voluntary departure order provided for a specific period of time—sixty days from the date the order was entered—in which she had to leave the United States.

25. On December 16, 2011, Ms. Vizguerra timely appealed the denial of her application for cancellation of removal to the Board of Immigration Appeals (BIA).

26. Pursuant to Department of Justice regulations, a timely appeal of an immigration judge's order stays the execution of that order. *See* 8 C.F.R. § 1003.6(a)). Thus, while Ms. Vizguerra's appeal to the BIA was pending, the sixty-day voluntary departure period was tolled.

27. Meanwhile, while her BIA appeal was still pending Ms. Vizguerra's learned her mother, who was still living in Mexico, became gravely ill. Ms. Vizguerra had not seen her mother for nearly fifteen years. She knew she had to try to say goodbye before it was too late. Ms. Vizguerra left the United States in September 2012 to try to visit her mom one last time. Unfortunately, however, her mother passed away while Ms. Vizguerra was on the plane. She made it just in time for the funeral.

28. Pursuant to Department of Justice regulations, a person's departure from the United States while an appeal is pending before the BIA constitutes a withdrawal of that appeal and the initial decision that was in place before the appeal was filed is deemed final. *See* 8 C.F.R. § 1003.4.

29. Accordingly, by departing the United States to visit her dying mother before her appeal was adjudicated, the law deemed Ms. Vizguerra's pending appeal withdrawn and her

voluntary departure order—the decision that was in place before the appeal was filed—went into effect.

30. The time period for Ms. Vizguerra to depart the United States began ticking again.

31. But Ms. Vizguerra had already left the country. Thus, by voluntarily departing from the United States and returning to Mexico at her own expense before the voluntary departure time period expired, Ms. Vizguerra complied fully with the voluntary departure order.

*Ms. Vizguerra's Return to the United States*

32. Having tended to her mother's funeral, Ms. Vizguerra attempted to return to the United States in April 2013 to reunite with her children. She walked across mountains and desert until her feet were destroyed. She was apprehended by U.S. Customs and Border Protection in Texas and detained after unlawfully crossing the border.

33. A purported arrest warrant issued by the U.S. Department of Homeland Security in Ms. Vizguerra's name alleges she entered the United States on April 20, 2013. The warrant notes that Designated Immigration Officer Loraine Reynolds, "Patrol Agent in Charge," issued the warrant but the document is unsigned.

34. Ms. Vizguerra was charged with illegal entry, a provision of the federal criminal code. On May 1, 2013, she pleaded guilty to one count in violation of 8 U.S.C. § 1325(a)(1). The U.S. District Court for the Western District of Texas sentenced her to one year of unsupervised probation.

35. The next day, Defendant ICE issued a Notice of Intent/Decision to Reinstate Prior Order. The Notice stated:

```
Name: Jeanette VIZGUERRA-Ramirez                              Date: May 2, 2013

In accordance with section 241(a)(5) of the Immigration and Nationality Act (Act) and 8 CFR 241.8, you are hereby notified that the
Secretary of Homeland Security intends to reinstate the order of _____Removal_____ entered against you. This intent
is based on the following determinations:                      (Deportation / exclusion / removal)

1. You are an alien subject to a prior order of deportation / exclusion / removal entered on  November 18, 2011  at
   Denver, Colorado                                                                                (Date)
   (Location)
```

36. The statutory authority on which the Notice relies provides for immediate deportation of a noncitizen who enters the United States without authorization after "having been removed or having departed voluntarily, *under an order of removal* . . ." INA § 241(a)(5); *also codified at* 8 U.S.C. § 1231(a)(5) (emphasis added). A noncitizen subject to this provision is not eligible for any form of relief under the INA and may not seek any further review of the underlying deportation order. INA § 241(a)(5); *also codified at* 8 U.S.C. § 1231(a)(5).

37. Upon information and belief, the "prior order of deportation/exclusion/removal entered on November 18, 2011 at Denver, Colorado" on which this Notice relies is in reference to the removal proceedings held in the Denver immigration court as discussed above, wherein Ms. Vizguerra voluntarily departed the United States *in lieu of* the entry of a deportation order.

38. Accordingly, there was no prior deportation/exclusion/removal order entered on November 18, 2011 in Denver, Colorado, as the Notice alleges.

39. Simply put, Ms. Vizguerra has never been subject to a deportation order and has never been deported from the United States.

40. Nonetheless, after serving her short jail sentence Ms. Vizguerra was turned over to ICE custody in El Paso, Texas, where she remained until June 7, 2013.

41. Ms. Vizguerra was then released under an order of ICE supervision, which required her to report to the ICE field office in Centennial, Colorado, on July 10, 2013.

42. She reported to the Centennial ICE field office on July 10, 2013, just as she was required to do. At that appointment, agents of Defendant ICE ordered her to check in again on July 24, 2013.

43. Again, Ms. Vizguerra did as she was told. But at her July 24 check-in, agents of Defendant ICE arrested her, citing the non-existent prior removal order as a basis for deporting her immediately to Mexico.

44. Ms. Vizguerra requested another stay of deportation, which Defendant ICE granted on August 8, 2013, for a period of one year.

45. Defendant ICE renewed Ms. Vizguerra's stay of deportation five more times. Each time she applied for another stay, Ms. Vizguerra worried it would be her last one and she would be summarily separated from her children and forced to leave the country where she has built a life.

46. Her sixth stay was set to expire in February 2017. She had a check-in with Defendant ICE scheduled on February 15, 2017.

47. Just before that check-in, Ms. Vizguerra had a bad feeling. She had been following the new Trump administration's harsh treatment of immigrants and non-citizens. One case stood out to her: A mother in Arizona was suddenly arrested and deported at one of her scheduled check-ins with Defendant ICE just days before Ms. Vizguerra's stay was scheduled to expire. Ms. Vizguerra feared a similar fate, so she followed her intuition and sought sanctuary in a Denver

church. When her lawyer and pastor went to the check-in in her place, agents of Defendant ICE were waiting there, ready to arrest her.

*Eighty-Six Days in Sanctuary*

48.     For the next eighty-six days—nearly three months—Ms. Vizguerra remained in the church, fearing agents of Defendant ICE would arrest her the moment she stepped outside the door.

49.     Ten days after entering sanctuary, Ms. Vizguerra penned an editorial for the NEW YORK TIMES. In the piece, she admitted the errors she had made in her past and took responsibility for her actions. She wrote:

> My people here in Denver are keeping their heads held high. The nation saw this spirit in the Day Without Immigrants actions, and we have allies countrywide, in schools and faith communities, on farm fields and in restaurants.
>
> Their example inspires me to continue the fight until we are all able to walk the street freely. But it is not easy to be so public, and—grateful as I am for the support of the Sanctuary Coalition—it is hard to live in a church instead of my home. Perhaps you've seen the hashtag #JeanetteBelongsHere. The United States is the country of my children. I will stay here because it is my home. I will not leave.

50.     From sanctuary, Ms. Vizguerra began to advocate for immigrant communities across the country and speak out against the Trump administration's so-called "zero tolerance" approach to immigration enforcement. Despite the difficulties of being a public figure—and the enhanced fear the publicity garnered—she did not shy away from telling her story or speaking to the media about the struggle she and her family were facing.

51.     Two months after entering Sanctuary, TIME MAGAZINE named Ms. Vizguerra to the TIME 100, the annual list of the one hundred most influential people in the world. Her fellow luminaries include Melinda Gates, Pope Francis, Ana DuVerney, and Jeff Bezos. Of her icon

11

status, TIME wrote, "She shed blood, sweat and tears to become a business owner, striving to give her children more opportunities than she had. This is not a crime. This is the American Dream."

52. Ms. Vizguerra was invited to—but was not able to attend because she risked apprehension by agents of Defendant ICE—the annual TIME 100 gala in New York City.

*Ms. Vizguerra's Activism and Service to Her Community*

53. On May 11, 2017, Ms. Vizguerra learned Defendant ICE had granted her application for another stay of removal. This stay protected Ms. Vizguerra until March 15, 2019. When she heard this news, she was overwhelmed with relief and joy. She left sanctuary the following day—eighty-six days after she took refuge. When she stepped outside, she was surrounded by her children, supporters, and friends from the community. She cried tears of joy.

54. Getting back on her feet after leaving sanctuary, however, was difficult for Ms. Vizguerra. She struggled to obtain work authorization and had to rely on the friends and organization that had stood by her throughout her time in sanctuary.

55. Despite all of her hardship, Ms. Vizguerra has remained a dedicated and tireless activist for labor and immigrant rights for nearly two decades. She is passionate, dedicated, and strong. She often gives her time to countless organizations and people, and she lends her voice to lift others in need.

56. Among the many organizations and causes she supports, Ms. Vizguerra is active with the American Friends Service Committee, a Quaker-based organization that collaborates with faith-based organizations throughout Denver on immigrants' rights and social justice issues, and the Colorado Immigrant Rights Coalition (CIRC), a coalition dedicated to improving the lives of immigrants and refugees by making Colorado a more welcoming, immigrant-friendly state.

57. Of Ms. Vizguerra, CIRC's Executive Director has stated, "Jeanette has represented the Colorado community at numerous national conferences and policy meetings seeking to build trust and strengthen community policing strategies. Jeanette is the type of person that looks out for the needs of those around her often much more than her own needs."

58. An Associate Professor at the University of Denver where Jeanette has been a frequent guest instructor has written, "Jeanette is truly a very important and valuable member of the community in Denver, and many people look to her for her leadership and knowledge. We need her here in Denver."

59. Indeed, Ms. Vizguerra has such an important figure in her community and has such unparalleled public support that not one, but two private bills were introduced in Congress on her behalf. Then-U.S. Congressman Jared Polis introduced House Resolution 752 on January 30, 2017, to provide Ms. Vizguerra relief from deportation. Shortly thereafter, on March 9, 2017, Senator Bennet introduced Senate Bill 603 to provide for the same relief. Neither Bill, however, passed.

60. The worldwide support for Ms. Vizguerra has not persuaded Defendant ICE, however, to cease its efforts to deport her. Each stay of deportation was granted entirely at the discretion of Defendant ICE, which had the authority to revoke it at any time.

61. Ms. Vizguerra's most recent stay of deportation expires on March 15, 2019. Fearing arrest, she has returned to sanctuary.

62. As long as Defendant ICE relies on a non-existent prior removal order to justify its efforts to deport Ms. Vizguerra, she will never be safe from arrest and separation from her family and her community.

*Ms. Vizguerra's Will to Survive*

63. The trauma of the past several years for Ms. Vizguerra and her family cannot be overstated—she suffers from extreme stress and anxiety, depression, and post-traumatic stress disorder, among other conditions. She often sleeps poorly and has no appetite. She worries constantly for her children, unsure of their fates should she be deported to Mexico.

64. Her children have woken up every day for years, wondering whether their mom is still with them. They have had nightmares of ICE agents accosting their mom with guns drawn, and they suffer from anxiety and stress. Their performance in school has suffered, as their attention is paid to worrying about losing their mother.

65. But Ms. Vizguerra is a fighter. She has survived countless tragedies, she is a crime survivor, and she is determined to triumph in her efforts to protect and provide for her family. Ms. Vizguerra is the embodiment of the American will to prevail, both toward the goal of serving her family, her community, and her country—the United States. As TIME wrote, Ms. Vizguerra *is* the American Dream.

66. Accordingly, Ms. Vizguerra is owed the full protection of the U.S. Constitution and the law. Defendant ICE must comply with the statutory processes and authority Congress has laid out for the agency.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
**Violation of the Administrative Procedure Act—5 U.S.C. §§ 701, *et seq*.**

67. The allegations in the preceding paragraphs are incorporated herein.

68. The APA requires a reviewing district court to decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the

terms of an agency action. 5 U.S.C. § 706. In doing so, the Act requires the reviewing district court to hold unlawful and set aside agency actions, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; contrary to constitutional right, power, privilege, or immunity; in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; or without observance of procedure required by law. *See* 5 U.S.C. §§ 706(2)(A)-(D).

69. According to Defendant ICE, Ms. Vizguerra is subject to a prior deportation order, which ICE claims it reinstated in 2013. Defendant ICE's reliance on a prior deportation order to initiate expedited deportation proceedings against Ms. Vizguerra is arbitrary and capricious, an abuse of discretion, not in accordance with law, and otherwise in violation of the APA because no deportation order exists.

70. Defendant ICE has no legal basis derived from the non-existent prior deportation order on which to deport Ms. Vizguerra from the United States in the absence of the initiation of removal proceedings, which would afford Ms. Vizguerra the opportunity to present her case as to the lawful bases on which she should be permitted to remain in the United States.

### SECOND CAUSE OF ACTION
### Violation of the Fifth Amendment—Right to Due Process

71. The U.S. Constitution protects every person within the territory of the United States, regardless of citizenship. Indeed, noncitizens physically on U.S. soil have constitutional rights, including the right to due process of law.

72. The guarantee of procedural due process of law requires Defendant ICE to comply with the law and afford noncitizens the proper and full procedures by which to prove their admissibility to the United States.

73. Defendant ICE's reliance on the non-existent prior deportation order in its efforts to deport Ms. Vizguerra from the United States without initiating removal proceedings or affording her any form of hearing is unlawful and violates her constitutional right to due process.

74. But for Defendant ICE's misapplication of the law, Ms. Vizguerra would not be facing immediate deportation.

## PRAYER FOR RELIEF

WHEREFORE, Ms. Vizguerra requests respectfully that this Court:

(a) Assume jurisdiction over this matter;

(b) Declare Defendant ICE's actions as described herein violate the APA and the U.S. Constitution;

(c) Declare the non-existent prior removal order on which Defendant ICE relies invalid and unlawful;

(d) Vacate and set aside Defendant ICE's actions, including the Notice of Intent/Decision to Reinstate Prior Order;

(e) Enjoin Defendant ICE from removing Ms. Vizguerra from the United States on the basis of the non-existent prior removal order;

(f) Retain jurisdiction over this matter until Defendant ICE fully remedies the violations of law described herein;

(g) Award attorneys' fees, costs, and other expenses as provided by applicable law; and

(h) Grant any further relief as this Court may deem just, proper, and equitable.

Dated: March 14, 2019

                                    Respectfully Submitted,

NOVO LEGAL L.L.C.

*s/ Aaron Elinoff*
4280 Morrison Road
Denver, Colorado 80219
T: 303-335-0250
F: 303-296-4586
E: aaron@novo-legal.com

*s/ Danielle C. Jefferis*
Danielle C. Jefferis, Of Counsel
2255 East Evans Avenue, Suite 335
Denver, CO 80208
T: 303-871-6155
F: 303-871-6818
E: djefferis@law.du.edu

*Counsel for Plaintiff Jeanette Vizguerra*